**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:25-CR-10274-NMG-1 |
| | ) | |
| KEJIA WANG | ) | |

**SENTENCING MEMORANDUM**

Mr. KEJIA WANG, pursuant to Fed. R. Crim. P. 32, respectfully submits his position in support of a downward variance from the guidelines range after this Court, in its discretion, applies any departure.

## I.    Statutory Penalties

This Court shall consider "the kinds of sentences available."[1]

Pursuant to a criminal information package, on August 27, 2025, Mr. Wang pleaded guilty under Fed. R. Crim. P. 11(c)(1)(B) to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One), conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Two), and one count of conspiracy to commit identity theft in violation of 18 U.S.C. §§ 1028(a)(7) and (f) (Count Three).[2] Count One is punishable by a term of imprisonment not more than twenty years, a term of supervised release of not more than three years, and

---

[1] 18 U.S.C. § 3553(a)(3).

[2] Plea Agreement, ECF No. 11.

1

a maximum fine of $250,000.[3] Count Two is punishable by a term of imprisonment of not more than twenty years, a term of supervised release of not more than three years, and a maximum fine of $250,000.[4] Count Three is punishable by a term of imprisonment of not more than fifteen years, a term of supervised release of not more than three years, and a maximum fine of $250,000.[5] There is *no mandatory minimum* on any of the three counts.

## II.    Sentencing Guidelines

This Court "shall consider . . . the kinds of sentence[s] and sentencing range[s] established" by the sentencing guidelines.[6]

Mr. Wang agrees with Probation that the applicable advisory guidelines range is 188–235 months of imprisonment.[7] However, in negotiating the appropriate sentence, and prior to any anticipated departure motions, the parties agreed that a sentence within 108–120 months of imprisonment is just and equitable.[8] Mr. Wang requests that this Court recognize the stipulation as such, and further requests that any downward departure consideration be made from the low end of the stipulated range. It is further Mr. Wang's position that this

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] 18 U.S.C. § 3553(a)(4).

[7] Presentence Investigation Report ("PSR") ¶ 118, Apr. 10, 2026.

[8] Plea Agreement, ECF No. 11.

Court apply a reasonable downward variance, from its resultant position following warranted departure from the low end of the stipulated range.

### III.   18 U.S.C. § 3553

#### a.   Nature and Circumstances of the Offense and the History and Characteristics of Mr. Wang (18 U.S.C. § 3553(a)(1))

##### 1.   Nature and Circumstances of the Offense

The nature and circumstances of Mr. Wang's offense conduct support a below-guidelines sentence.[9]

This is Mr. Wang's first offense. In 2023, the United States Sentencing Commission ("the Commission") ratified Amendment 821, in which offenders with zero criminal history points ("ZPOs") receive a two-point reduction from their Total Offense Level if they meet certain criteria. Here, Mr. Wang meets ten of the eleven criteria; his only disqualification is that Probation applied an aggravating role adjustment under USSG §3B1.1.[10] The primary reason for the Commission issuing this amendment was to recognize that "[ZPOs] have considerably lower recidivism rates than other offenders, including offenders with one criminal history point . . . . [ZPOs] were less likely to be rearrested than

---

[9] 18 U.S.C. § 3553(a)(1).

[10] PSR ¶ 72, Apr. 8, 2026.

"one point" offenders (26.8% compared to 42.3%), the largest variation . . . within the same Criminal History Category."[11]

Thus, the Commission's theory behind issuing the two-point reduction for ZPOs was that they are less likely to recidivate and therefore deserve a lower sentence. In a study by the Commission on the recidivism rates of federal offenders, those who received an aggravating role enhancement, such as Mr. Wang, recidivated 13.7% *less* often than those who *did not* receive one.[12] Even though Mr. Wang is technically ineligible for a ZPO adjustment, by the Commission's own logic, he should receive a more lenient sentence due to his lower likelihood of recidivism.

Furthermore, the crimes to which Mr. Wang pleaded guilty are serious, but non-violent.[13] The non-violent nature of Mr. Wang's conduct weighs in favor of a below-guidelines sentence, as he did not directly or indirectly physically harm anyone through his conduct. The fact that the nature of Mr. Wang's offenses is non-violent also weighs in favor of a downward variance.

### 2.     History and Characteristics of Mr. Wang

Mr. Wang's history and characteristics support a downward variance.[14]

---

[11] U.S. Sent'g Comm'n, *Amendments to the Sentencing Guidelines*, 79 (Apr. 27, 2023) https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf

[12] Ryan Cotter, *et al.*, *Recidivism of Federal Offenders Released in 2010*, 34 U.S. Sent'g Comm'n (2021).

[13] PSR ¶ 1, Apr. 8, 2026.

[14] 18 U.S.C. § 3553(a)(1).

Mr. Wang is a loving husband, a hard worker, and an excellent father. First, he and his wife have a strong marriage despite the instant offense.[15] They go on an annual vacation together to stay connected.[16] They work as a team to create a nurturing home for their children; while Mr. Wang's wife is a homemaker, Mr. Wang provides financial support.[17] Mr. Wang's wife feels immense anxiety about Mr. Wang's potential term of imprisonment, as she will lose her source of emotional stability.[18]

Mr. Wang is a hard worker and a stable provider for his family.[19] He has worked at his current place of employment for ten years, and his co-workers hold him in high esteem, recognizing his immense dedication to his work.[20] Since Mr. Wang is the sole financial provider for his family, any lengthy term of imprisonment would cause severe financial consequences for his wife and children.

Mr. Wang is a doting father who loves spending time with his children.[21] As a child, Mr. Wang enjoyed playing sports, and now enjoys doing the same

---

[15] PSR ¶ 94, Apr. 8, 2026.

[16] *Id.*

[17] PSR ¶ 95, Apr. 8, 2026.

[18] PSR ¶ 99, Apr. 8, 2026.

[19] *Id.*

[20] PSR ¶ 99; 106, Apr. 8, 2026.

[21] PSR ¶ 86; 99, Apr. 8, 2026.

with his own children.[22] Studies have shown that children with incarcerated parents suffer emotionally, financially, and educationally.[23] A term of imprisonment would not just punish Mr. Wang; it would also punish his children, especially given his strong presence in their lives.

### b. Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))

A below-guidelines sentence will be sufficient but not greater than necessary to afford adequate deterrence to criminal conduct. According to the U.S. Department of Justice ("DOJ"), "the certainty of being caught is a vastly more powerful deterrent than the punishment."[24] Recent research has revealed that the speed and certainty of punishment, not its severity, deter crime; there is no evidence that the deterrent effect of punishment increases as the length of imprisonment grows.[25] This is because criminals rarely understand the specific punishments associated with the crimes they commit.[26] As such, the fact that Mr. Wang was arrested and will receive a punishment (even if it is a non-custodial

---

[22] *Id.*

[23] Eric Martin, *Hidden Consequences: The Impact of Incarceration on Dependent Children*, 278 Nat'l. Inst. J. 10, 12–13 (2017).

[24] U.S. Dep't of Just., *Five Things About Deterrence*, Nat'l Inst. Just. (2016) (citing Robert Sampson, *et al.*, *On the Robustness and Validity of Groups*, 20(1) J. of Quantitative Criminology 37–42 (2004) and Daniel Nagin, *et al.*, *Imprisonment and Reoffending*, 38 Crime and Just. 115–200 (2009)).

[25] *Id.*

[26] *Id.*

sentence) will be the most deterrent factor for future criminals, not the length of his sentence.

### c.    Need to Protect the Public from Mr. Wang's Future Criminal Conduct (18 U.S.C. § 3553(a)(2)(C))

Mr. Wang's offenses are non-violent, placing him in a category of offenders who are less likely to recidivate. In fact, "offenders who were released following sentencing for a violent offense were more likely to be rearrested than non-violent offenders, 59.9 percent compared to 48.2 percent."[27]

Furthermore, Mr. Wang is forty-two years old.[28] There is a sharp decline in the likelihood of recidivism after age thirty-five.[29] According to the DOJ, "[a] more severe (i.e., lengthy) prison sentence for convicted individuals who are naturally aging out of crime . . . is a costly way to deter future crimes by aging individuals who already are less likely to commit those crimes by virtue of age."[30] A lengthy term of imprisonment for Mr. Wang would thus be a waste of resources, as he is in an age range statistically unlikely to re-offend, especially considering the fact that he is a non-violent offender and the need for his incapacitation is low.[31]  Therefore, a variant sentence will be sufficient but not

---

[27] Ryan Cotter, *supra* note 12 at 35.

[28] PSR at 1, Apr. 8, 2026.

[29] Ryan Cotter, *supra* note 12 at 35.

[30] U.S. Dep't of Just., *supra* note 24.

[31] *See generally* PSR, Apr. 8, 2026.

greater than necessary to protect the public from Mr. Wang's future criminal conduct, in the unlikely event it should occur.

### d. Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment (18 U.S.C. § 3553(a)(2))

#### 1. Reflect the Seriousness of the Offense and Provide Just Punishment

A below-guidelines sentence will be sufficient but not greater than necessary to reflect the seriousness of the offense and provide just punishment.[32]

First, Mr. Wang's offenses are non-violent.[33] If he were sentenced to the bottom of the guidelines range as agreed to in the Plea Agreement (108 months of imprisonment), the federal government would spend approximately $465,372 to incarcerate him.[34] By contrast, the cost of supervision by a probation officer would be $42,660 over the same period, *one hundredth* the cost of incarceration.[35] Considering that Mr. Wang is a nonviolent offender, the costs of his incarceration vastly outweigh the benefits because his being placed on supervision would not endanger the community. A below-guidelines sentence, therefore, would reflect the seriousness of the offense more accurately than one within the guidelines.

Second, Mr. Wang will suffer the financial consequences of the instant offense for the rest of his life. On average, people who served time in prison

---

[32] 18 U.S.C. § 3553(a)(2).

[33] *See generally* PSR, Apr. 8, 2026.

[34] PSR ¶ 133, Apr. 8, 2026.

[35] *Id.*

experience a 52% decrease in subsequent annual earnings.[36] The average lifetime loss of earnings for people who have served a term of imprisonment is $484,400.[37] Mr. Wang's anticipated wage reduction will affect his ability to provide for his young family, and thus, the collateral consequences of this offense alone are sufficient to reflect its seriousness and provide just punishment, supporting a below-guidelines sentence.

### 2.   Promote Respect for the Law

A below-guidelines sentence will be sufficient but not greater than necessary to promote respect for the law.[38]

On September 3, 2025, this Court released Mr. Wang on an unsecured appearance bond.[39] Since then, Mr. Wang has complied with all conditions of release, demonstrating his ability to abide by the law.[40] Moreover, Mr. Wang has unequivocally accepted responsibility for his actions.[41] The most obvious example of Mr. Wang's respect for the law and extreme acceptance of responsibility is that he has satisfied the agreed money judgment of $400,000 in

---

[36] Terry-Ann Craigie, *et al.*, *Conviction, Imprisonment, and Lost Earnings How Involvement with the Criminal Justice System Deepens Inequality*, 7 (2020).

[37] *Id.* at 7.

[38] 18 U.S.C. § 3553(a)(2).

[39] PSR ¶ 3, Apr. 8, 2026.

[40] *Id.*

[41] PSR ¶ 63, Apr. 8, 2026.

full prior to his sentencing proceeding.[42] His compliant behavior upon release and his acceptance of responsibility demonstrate that his mere arrest and conviction were sufficient to foster a deep respect for the law; a below-guidelines sentence would therefore be appropriate.

e.    **Substance Abuse and Mental Health Treatment or Vocational Training (18 U.S.C. § 3553(a)(2)(D))**

Mr. Wang will participate in any self-development opportunities that this Court deems appropriate, in or out of custody.

f.    **Need to Avoid Unwarranted Sentencing Disparities (18 U.S.C. § 3553(a)(6))**

Mr. Wang submits that a lenient sentence is necessary to avoid unwarranted sentencing disparities.

Only 20.9% of offenders charged with money laundering received a sentence within the applicable guidelines range.[43] 43.4% of offenders charged with money laundering received a downward variance, with an average sentence reduction of 48.8%.[44] 27.3% received substantial-assistance departure, with an average sentence reduction of 67.2%.[45] These statistics show that it is *uncommon* for money-laundering offenders to receive a within-guidelines sentence, and it is *common* for them to receive a below-guidelines sentence.

---

[42] PSR ¶ 110, Apr. 8, 2026.

[43] U.S. Sent'g Comm'n, *Quickfacts: Money Laundering*, (July 2025) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Money_Laundering_FY24.pdf

[44] *Id.*

[45] *Id.*

10

For offenders charged with theft, property destruction, and fraud offenses under USSG §2B1.1, only 41.4% received a sentence within the original guidelines range.[46] 37.9% received downward variances with an average sentence reduction of 57.0%.[47] 14.5% received substantial subsistence departures, with an average sentence reduction of 68.1%.[48] These statistics show that, similar to offenders charged with money laundering, offenders charged with theft, property destruction, and fraud offenses under §2B1.1 were more often sentenced leniently than within the guidelines. A substantial downward variance for Mr. Wang, therefore, would not cause sentencing disparities.

## IV.    Letters in Support

Mr. Wang submits the attached four letters in support of this Court's leniency at the sentencing hearing.

## V.    Recommended Designation

Mr. Wang respectfully requests that, should he be sentenced to a term of imprisonment, this Court recommend that he be assigned to a facility as close to his family as possible.

---

[46] U.S. Sent'g Comm'n, *Quickfacts: Theft, Property Destruction, and Fraud*, (June 2025) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY24.pdf

[47] *Id.*

[48] *Id.*

## VI.   Conclusion

Mr. Wang, based on the foregoing assertions and arguments, prays that this Court issue a variant sentence.

Date:          April 10, 2026

Respectfully Submitted,

***s/ Murdoch Walker, II***
Murdoch Walker, II, Esq.
Ga. Bar # 163417
mwalker@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St. NW, Ste. 3650
Atlanta, GA 30303
O 404.496.4052 | F 866.819.7859
www.lowtherwalker.com

Attorney for Defendant
Kejia Wang

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:25-CR-10274-NMG-1 |
| | ) | |
| KEJIA WANG | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, I electronically filed the foregoing

SENTENCING MEMORANDUM with the Clerk of the United States District

Court for the District of Massachusetts by way of the CM/ECF system, which

automatically will serve this document on the attorneys of record for the parties

in this case by electronic mail.

Date:        April 10, 2026

Respectfully Submitted,

*s/ Murdoch Walker, II*
Murdoch Walker, II, Esq.
Ga. Bar # 163417
mwalker@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St. NW, Ste. 3650
Atlanta, GA 30303
O 404.496.4052 | F 866.819.7859
www.lowtherwalker.com

13